UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-324-GWU

DAVID MURPHY, PLAINTIFF,

VS.    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,    DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Murphy v. Barnhart, London Civil Action No. 02-583-GWU (E.D. Ky.) to seek review of an administrative decision denying his application for Disability Insurance Benefits (DIB) with an alleged onset date of April 1, 1999. (Tr. 14-26, 52). After a period of reconsideration prompted by the undersigned's Memorandum Opinion, Order and Judgment of February 6, 2004 (Tr. 669-80), another negative agency decision was issued (Tr. 598-607). The appeal is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

1

Murphy

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Murphy

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

Murphy

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then

Murphy

an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants

Murphy

. . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Court's previous remand was based on an unaddressed issue regarding the plaintiff's extremely limited visual fields, as found by an ophthalmologist, Dr. Stuart Eads, in July, 2002. (Tr. 513). Dr. Eads had some question about his results and suggested a re-examination to "ascertain the true visual field potential." (Id.).

On remand, the ALJ obtained a new consultative ophthalmological evaluation by Dr. Syamala H. K. Reddy, which was conducted on June 30, 2004.[1]  Dr. Reddy found full visual fields in both eyes and, although Mr. Murphy was "suffering from very high myopia," his vision was correctable to 20/40 in the right eye and 20/30 in the left eye.  (Tr. 690).  Dr. Reddy concluded that if Mr. Murphy wore  corrective lenses, he did not see any limitations in carrying out basic work activities, although he also commented about a "mild" limitation on working around unprotected heights, moving machinery, and driving automobile equipment.  (Tr. 690, 693).

There was an additional eye examination by Dr. Benjamin L. Mackey on December 23, 2005, well after the DLI, and  several months after the plaintiff had been diagnosed with new onset diabetes (Tr. 861-2).  This examination showed even better correctable vision and no background diabetic retinopathy.  (Tr. 891-3).  Dr. Mackey opined that, with correction, Mr. Murphy should have no problems performing most job-related activities based on his visual acuity.  (Tr. 893).

Finally, a medical expert, Dr. Thomas Rowe, a specialist in ophthalmology, testified at the April 26, 2006 administrative hearing that Mr. Murphy did not meet or equal any of the Commissioner's Listings of Impairment, and would have "no

---

[1] The plaintiff's Date Last Insured (DLI) was coincidentally the same day, June 30, 2004.  (Tr. 599).

Murphy

restrictions" based on the medical records. (Tr. 940-2). Accordingly, the Court finds that the issues relating to the plaintiff's visual fields were resolved.[2]

The current ALJ concluded that Mr. Murphy had "severe" impairments consisting of type one diabetes controlled with medication and no retinopathy, high myopia, hypertension, osteoarthritis, and AC joint dysfunction. (Tr. 601). She presented a hypothetical question to a vocational expert asking whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "light" level exertion, could occasionally bend, could not reach above his right shoulder, had a "seriously limited but not precluded" ability to understand, remember, and carry out complex instructions and a "limited but satisfactory" ability to deal with stresses, understand, remember, and carry out detailed instructions, demonstrate reliability, and deal with people. (Tr. 944-5). The VE responded that, with these restrictions, the plaintiff could return to his past relevant work as a security guard. (Tr. 945). In the alternative, he named other jobs that such a person could perform, and gave the numbers in which they existed in the state and national economies. (Tr. 945-6).

---

[2]Although Dr. Reddy's expression of "mild" limitations on working at unprotected heights, around moving machinery, and driving automobile equipment were not mentioned by the ALJ, or included in her hypothetical question to the VE, the plaintiff has not raised the issue on appeal, and the report of Dr. Mackey, although it was after the DLI, and the testimony of the ME provide some evidence to support a finding of no visual restriction.

Murphy

The plaintiff's primary argument on appeal is that the ALJ erroneously evaluated his mental impairments, in failing to find that any of his mental conditions were "severe," and in placing reliance on a consultative mental status examination by Psychologist Christopher Catt which took place in May, 2005, almost a year after the DLI.

First, as the defendant points out, the Sixth Circuit has held that it is not reversible error for an ALJ to find no "severe" impairment in cases where other "severe" impairments are found and the ALJ proceeds with the sequential evaluation process. Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 244 (6th Cir. 1987).  The question remains whether the hypothetical mental factors are supported by substantial evidence.

Although Mr. Murphy was psychiatrically hospitalized on two occasions in 1998 for marriage-related problems, and was given a Global Assessment of Functioning (GAF) score of 55 on discharge, reflecting "moderate" symptoms per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34, this occurred before his alleged onset date.  During the relevant period between the alleged onset date of April 1, 1999 and the expiration of his insured status on June 30, 2004, the plaintiff was psychiatrically evaluated by Dr. Kevin Eggerman. Dr. Eggerman's examination took place in March, 2000, and the plaintiff reported that he and his ex-wife had a history of alcohol and substance abuse

problems, but he had improved his anger control problems, and his job relationships were always fine. (Tr. 351-2). He did not have any current suicidal intent, and had not followed up his psychiatric admissions. (Tr. 353). Mr. Murphy was living with his mother, and passed his time by reading, using his computer, playing video games, taking care of animals, and fixing minor things around the house. (Tr. 354). Dr. Eggerman observed mild anxiety, but no depression, irritability or agitation, and concluded that Mr. Murphy would have a "fair" ability to understand, remember, and carry out complex instructions, relate to co-workers and supervisors, persist on tasks and tolerate work-related stress. (Tr. 357). He did not define the term "fair."

     State agency psychologists who reviewed the record at approximately this point concluded that Mr. Murphy would have a "moderately limited" ability to carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 379-81, 398-400). The plaintiff asserts that it was error for the ALJ to ignore these opinions, which were given during the relevant period, and give the restrictions found by Psychologist Catt after the DLI, particularly in view of the fact that Catt did not review any of the relevant mental treatment records. However, the evidence from the plaintiff's treating psychiatric sources at the Comprehensive Care Center (CCC) from 2000 through 2004 support the view that his mental impairments were not particularly limiting during the time at issue. They

Murphy

indicate that Mr. Murphy was initially given a diagnosis of mood disorder "due to lumbar disc disease" with a GAF of 60, and Vocational Rehabilitation was encouraged. (Tr. 491). By May, 2001, Mr. Murphy reported that he was working for his mother and staying busy all the time. (Tr. 470). Medications improved his level of energy, in by October, 2001, Mr. Murphy reported that he had more activities and was helping his brother with different jobs. (Tr. 458,463). In January, 2002, the only stressor reported was due to waiting for a decision on his Social Security application, and the staff psychiatrist again suggested Vocational Rehabilitation. (Tr. 779). Later that year, Mr. Murphy reported he had an opportunity for a job working at a Boy Scout camp (Tr. 770), and received physical clearance from his family physician to go camping with the Boy Scouts in June, 2002. (Tr. 815). He continued his activities with the Boy Scouts in 2003 (Tr. 741, 753, 758), and discontinued them only because he was "let go" in March, 2004 (Tr. 735). He described being "devastated" by his dismissal, and apparently developed feelings of paranoia, but the most recent note before the DLI showed a favorable response to medication, with "increased energy and motivation." (Tr. 728, 730).

      Moreover, a hypothetical question with the mental restrictions given by the state agency psychologists was presented to a VE at the previous administrative hearing and, despite the physical factors being much more restrictive than the current hypothetical question, a VE testified that there were jobs that such a person

Murphy

could perform. (Tr. 582-4). Consequently, it is clear that no useful purpose would be served by a remand on this issue.

Finally, Mr. Murphy argues that the physical factors in the current hypothetical question were not supported by substantial evidence, citing the fact that the prior administrative decision had found him to be limited to light level exertion with no use of the right arm, a position change every 30 minutes, and no concentrated exposure to vibration. (Tr. 20). No specific medical opinion is cited by the plaintiff to support this level of restriction, however. Since the case was remanded, the Commissioner was not bound by the principles of <u>res judicata</u> or collateral estoppel to adopt the same restrictions. No treating or examining source provided restrictions that were greater than found by the ALJ in the present hypothetical question. Therefore, this argument is without merit.

The decision will be affirmed.

This the 21st day of March, 2007.



Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**